IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02337-MSK

VINCENT TRUJILLO,

      Applicant,

vs.

WARDEN STEVE HARTLEY, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

---

      This matter comes before the Court on the Petitioner Vincent Trujillo's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# 2).[1]  The Respondents filed an Answer (# 10).  The Petitioner filed a traverse (# 14).  Having considered the same, along with the state court trial record, the Court

      **FINDS** and **CONCLUDES** that:

### I.  Jurisdiction

The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. §§ 2254 and 1331.

### II.  Background

---

[1]Because the Petitioner appears pro se, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21(1972).  However, the Court does not serve as his advocate. *See Hall v. Bellman*, 935 F.2d 1106, 1110 (10th Cir.1991).

The Petitioner was charged in state court with one count of criminal attempt to commit first degree murder and one count of first degree assault.[2]  The charges arose from a stabbing that occurred in Denver on May 10, 2000. A witness testified that while she was sitting in her car in the parking lot of a Blockbuster Video store, she noticed two Hispanic men, one of them the Petitioner, standing at the intersection of Colfax Street and Ogden Ave. harass an older man (the victim) by pushing and patting him.  She observed that one of the men pushed the victim very hard in the chest.  The victim grabbed his chest and started to walk away before he fell down on the sidewalk.  The witness watched the Petitioner close a knife against his leg as he crossed the street towards her.  The witness entered the Blockbuster Video and asked an employee to call the police.  (The witness later learned that the victim had been stabbed.)

 A Blockbuster employee ran outside, approached the Petitioner and asked him what happened.  The Petitioner told the employee that his uncle had committed a crime and that he just wanted to go home.   The Petitioner started to walk away, but the employee  detained him until the police arrived.  The Petitioner told police officers that his uncle had committed the crime.

At trial, the Petitioner testified that on the date of the incident he and his uncle were extremely intoxicated.  They got off a bus at Colfax and Downing Streets at approximately 6:00 p.m. The Petitioner's uncle asked the victim for a cigarette.  After a  few words were exchanged,

---

[2]This general introductory background is taken from the statement of the case and statement of the facts in the Petitioner's opening brief on direct appeal.  Answer  Appendix  B at 2-6.

both the uncle and the victim fell down. When the Petitioner pulled his uncle off the victim, his uncle handed him a knife. His uncle fled the scene after telling the Petitioner to run away.

At the conclusion of the Petitioner's trial, the jury found the Petitioner guilty of criminal attempt to commit second degree murder, assault in the first degree, and tampering with physical evidence. The trial court sentenced the Petitioner to concurrent sentences of thirty-two years for first degree assault, twenty-four years for attempt to commit second degree murder, and eighteen months for evidence tampering.

The state appellate court affirmed the Petitioner's convictions on direct appeal. *See People v. Trujillo*, No. 01CA2273 (Colo. App. Oct. 16, 2003) (unpublished decision), Answer Appendix E. The Petitioner's request for certiorari review by the Colorado Supreme Court was denied on May 3, 2004.

The Petitioner then filed a motion for post conviction relief under Colo. Crim. P. Rule 35(c), which was denied by the trial court without a hearing on May 18, 2005. The state appellate court affirmed the trial court's order on the merits, with one exception - the court concluded that the Petitioner was entitled to a hearing on his claim that his trial counsel was constitutionally ineffective in failing to file a timely motion for reduction of sentence under Colo. Crim. P. Rule 35(b). *People v. Trujillo,* Case No. 05CA1389 (Colo. App. April 19, 2007) (unpublished decision), Answer Appendix P. The appellate court subsequently granted the prosecution's petition for rehearing, and dismissed the Petitioner's claims of ineffective assistance of trial counsel because the claims had not been addressed by the trial court. *People v. Trujillo*, 169 P.3d 235, 237 (Colo. App. 2007), Answer Appendix R at 1 (petition for rehearing

granted, prior opinion announced April 19, 2007 withdrawn). The Petitioner's request for certiorari review by the Colorado Supreme Court was denied on October 9, 2007. The mandate issued on October 19, 2007.

The Petitioner filed his petition in this action on November 7, 2007, alleging that: (1) he was denied a fair trial in violation of his Fourteenth Amendment due process right because the evidence was insufficient to warrant a complicity instruction; (2) his due process right to a fair trial was violated when the trial court precluded impeachment testimony by a rebuttal witness; (3) his sentence was enhanced unlawfully by factors that were not proven to the jury beyond a reasonable doubt, in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (4) his trial/appellate counsel was constitutionally ineffective in failing to file a motion for reconsideration of sentence under Colo. Crim. P. Rule 35(b); (5) his trial counsel was ineffective in failing to investigate the uncle's background to discover information that would have impeached his uncle's credibility; and, (6) his appellate counsel was constitutionally ineffective in failing to raise the following meritorious issues on appeal: (a) the trial court's admission of evidence concerning the out-of-court show-up identification by the witness violated due process; (b) the Petitioner was denied a fair trial because the jury saw him in restraints; and, (c) the trial court's refusal to instruct the jury on the Petitioner's theory of the case violated due process.

The Court finds, and Respondents concede, that the Application was timely filed under 28 U.S.C. § 2244(d).

### III. Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court. *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . [it] does not review a judgment, but the lawfulness of the Petitioner's custody simpliciter." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).

Because the Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs the Court's review. *Cannon v. Mullin*, 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson*, 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)). Under the AEDPA, a district court may only consider a habeas petition when the Petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court, unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether the Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law that is implicated, theCourt's inquiry pursuant is complete. *See id*. at 1018. If a clearly established rule of federal law is implicated, the Court must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [ (10th Cir. 2006) ] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court

> cases, but unreasonably applies it to the facts. *Id.* at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House,* 527 F.3d at 1018.

The Court's inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), the Court must presume that the state court's factual determinations are correct and a petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, the Court "owe[s] deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, the Court "must uphold the state court's summary decision unless [the court's] independent review of the record and pertinent federal law persuades [it] that [the] result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id*. at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the Petitioner's claims." *Id*.

## IV.  Analysis

### A.  Procedural Issues

As a preliminary matter, Respondents assert that the Petitioner has failed to exhaust his first, third, fourth, fifth and sixth claims in the state courts, and therefore, these claims are procedurally barred.

Pursuant to 28 U.S.C. § 2254(b)(1), a petition for a writ of habeas corpus may not be granted unless it appears that the Petitioner has exhausted state remedies or that no adequate state remedies are available or effective to protect the Petitioner's rights. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845  (1999) (a state prisoner must "give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"); *Dever v. Kansas State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir.1994).  A claim has been exhausted if it has been "fairly presented" to the state court. *Bland v. Sirmons*, 459 F.3d 999, 1011 (10th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)).  Fair presentation requires that the federal issue be presented properly "to the

highest state court, either by direct review of the conviction or in a post-conviction attack."
*Dever*, 36 F.3d at 1534. Reference to broad federal rights such as due process, without also alerting the state courts to the particular analysis developed by the Supreme Court for a specific violation, is not fair presentation of a federal constitutional question. *See Gray v. Netherland*, 518 U.S. 152, 163 (1996). A petitioner has not presented a constitutional claim to the state courts merely because "all the facts necessary to support the federal claim" were before the state courts, or because a "somewhat similar" claim was brought in the state courts. *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (citations omitted). Instead, a petitioner must have raised a "virtually identical" claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995) (per curiam) (finding that "mere similarity" of claims is insufficient to exhaust). The presentment requirement is satisfied if the substance of a federal habeas claim is presented to the state courts. *Picard*, 404 U.S. at 278; *Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. 2009). A state prisoner bringing a federal habeas corpus action bears the burden of showing that he has exhausted all available state remedies. *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir.1992).

With the foregoing legal principles in mind, the Court addresses below Respondents' contention that the Petitioner failed to exhaust state court remedies for all of his claims, except for claim two.

## 1. Claim One

The Petitioner asserts in claim one that he was deprived of a fair trial because the evidence was insufficient to warrant a complicity instruction. Respondents contend that the

Petitioner failed to present this claim to the state courts as a question of federal constitutional law because he relied exclusively on state law.

The Petitioner argued on direct appeal that the complicity instruction was not supported by the evidence, that defense counsel had objected to the instruction at trial, and that the erroneous instruction was not harmless error, even if it was not a constitutional error.  The state appellate court analyzed the Petitioner's claim under the following standard:

> When assessing the sufficiency of the evidence in support of a finding of guilty, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might be fairly drawn from the evidence. [citation omitted].

Answer Appendix E at 2.

The standard used by the state appellate court is virtually identical to the federal standard for assessing the sufficiency of the evidence as articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979).  Under *Jackson*, evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  443 U.S. at 319 (emphasis in the original).

Because the state appellate court adjudicated the Petitioner's claim under a state standard law that is essentially indistinguishable from the *Jackson* standard, the Court finds that the Petitioner has exhausted his remedies in the state court.  *See O'Sullivan*, 526 U.S. at 842 (state

prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition).[3]

## 2. Claims Three and Six

The Petitioner asserts in claim three that he was deprived of due process when his sentence was enhanced by factors that were not proven to the jury beyond a reasonable doubt, in violation of *Apprendi*. In claim 6, he asserts that his appellate counsel was ineffective in failing to raise meritorious issues on appeal. Respondents contend that claims three and six are not exhausted because the Petitioner failed to present the claims to the Colorado Supreme Court. Respondents further maintain that application of Colorado Appellate Rule 51.1 does not compel the Court to conclude otherwise.

Rule 51.1, adopted on May 18, 2006 while the Petitioner's state post conviction proceeding was pending, states that a litigant need not appeal to the Colorado Supreme Court in order to satisfy the exhaustion requirement.[4] Under *O'Sullivan*, the Petitioner must present his

---

[3] The Petitioner also asserted the claim in his petition for certiorari review to the Colorado Supreme Court, the Court need not address the applicability of Colorado Rule of Appellate Procedure 51.1 and instead analyzes the merits of the Petitioner's claim, as set forth below.

[4] Colo. App. R. 51.1 provides:

> [i]n all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be

claim to the state's highest court only if review in that court is available. 526 U.S. at 845.

Although the Tenth Circuit has not yet weighed in on the issue,[5] four circuit courts have

concluded that similar state court rules rendered review in the state's highest court unavailable.[6]

*See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004); *Adams v. Holland*, 330 F.3d 398,

401-03 (6th Cir. 2003); *Randolph v. Kemna*, 276 F.3d 401, 404-05 (8th Cir. 2002); *Swoopes v.*

*Sublett*, 196 F.3d 1008, 1009-10 (9th Cir. 1999). This Court agrees with the reasoning of those

decisions and finds that the Petitioner was not required to present his claims to the Colorado

Supreme Court as a prerequisite to federal habeas review. The Court thus also addresses the

merits of claims three and six.

**3. Claims Four and Five**

The Petitioner asserts in his fourth claim that his trial/appellate counsel was

constitutionally ineffective in failing to timely file a motion for reconsideration of sentence

under Colo. Crim. P. Rule 35(b). The Petitioner alleges in his fifth claim that trial counsel was

ineffective in failing to investigate the uncle's background to discover information that would

have impeached his credibility at trial. Respondents argue that the Petitioner was procedurally

defaulted on claims four and five in the state appellate court because he raised the claims in his

---

deemed to have exhausted all available state remedies.

[5]*See Berg v. Foster*, No. 05-1126, 2007 WL 2234570 at *6 (10th Cir. Aug. 6, 2007) (unpublished); *Mitchell v. Watkins*, No. 07-1147, 2007 WL 3194104, at **2-3 (10th Cir. Oct. 25, 2007) (unpublished).

[6] These opinions rely upon Justice Souter's concurrence in *O'Sullivan*, 526 U.S. at 849-50.

opening brief before the trial court ruled on his supplemental post conviction motion. The Court

agrees with Respondents that claims four and five are procedurally defaulted.

In the Petitioner's post conviction proceeding, the state appellate court rejected his

ineffective assistance of trial counsel claims in the court's decision on rehearing:

> Defendant also filed a supplemental post conviction motion alleging ineffective
> assistance of trial counsel for failure to investigate and discover exculpatory
> evidence and to seek a reduction in sentence, which motion had not been ruled
> upon at the time defendant filed his notice of appeal. We decline to address
> defendant's supplemental claims because they were not considered below, and we
> dismiss this part of the appeal.

*Trujillo*, 169 P.3d at 237.

The state appellate court denied the Petitioner's claims on procedural grounds and did not

reach the merits. On habeas review, this Court does not consider issues that have been defaulted

in state court on an independent and adequate state procedural ground, unless the Petitioner can

demonstrate cause and prejudice or a fundamental miscarriage of justice. *See Coleman*, 501 U.S.

at 749-50. "A state procedural ground is independent if it relies on state law, rather than federal

law, as the basis for the decision." *English v. Cody*, 146 F.3d 1257, 1259 (10th Cir. 1998). For

the state ground to be adequate, it must be " 'strictly or regularly followed'" and "applied

'evenhandedly to all similar claims.'" *Duvall v. Reynolds*, 139 F.3d 768, 797 (10th Cir. 1998)

(quoting *Hathorn v. Lovorn*, 457 U.S. 255, 263 (1982)). Concerns of federalism and comity

dictate that the federal courts respect the state's procedural rules. *Coleman* 501 U.S. at 751.

The state appellate court rejected the Petitioner's ineffective assistance of trial counsel

claims based on a state procedural rule that requires claims to be raised in a post conviction

motion before the trial court to be considered on appellate review. This rule has been regularly

followed by the Colorado appellate courts and applied even-handedly to similar claims. *See e.g.*

*People v. Goldman*, 923 P.2d 374, 375 (Colo. App. 1996); *People v. Simms*, 523 P.2d 463, 465

(Colo. 1974); *People v. Hampton*, 857 P.2d 441, 445-46 (Colo. App. 1992), *aff'd on other*

*grounds*, 876 P.2d 1236 (Colo. 1994)). The Court finds that the state appellate court's resolution

of claims four and five constitutes an adequate and independent state procedural ground. The

Petitioner must therefore satisfy the cause and prejudice standard, or demonstrate that the narrow

fundamental miscarriage of justice exception applies, to excuse his procedural default.

"Cause" for a procedural default exists when some objective factor external to the

defense impeded the Petitioner or his counsel from complying with the state procedural rule.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986). The Petitioner states in his Traverse that he is not

responsible for the trial court's failure to rule on the claims before he filed an appeal of the trial

court's order denying his Colo. Crim. P. Rule 35(c) post conviction motion. The state court

record reflects that the Petitioner filed his post conviction motion on April 19, 2005. The trial

court denied the motion on May 18, 2005. The Petitioner filed a motion for reconsideration

asserting his supplemental claims of ineffective assistance of trial counsel on June 10, 2005, then

appealed the trial court's order denying his Rule 35(c) motion on July 6, 2005, before the trial

court ruled on his motion for reconsideration. The Petitioner does not explain why he failed to

raise the supplemental claims in his original post conviction motion; his pro se status is

insufficient to constitute "cause" for his procedural default. *Klein v. Neal*, 45 F.3d 1395, 1400

(10th Cir. 1995).  The Court finds that the Petitioner has failed to satisfy the cause and prejudice standard.

The Court further finds that the Petitioner has not asserted facts to demonstrate that he is actually innocent of the crimes of which he is convicted.  As a consequence, he has failed to make a colorable showing of factual innocence required under the narrow fundamental miscarriage of justice exception to the procedural default doctrine.  *See Schlup v. Delo*, 513 U.S. 298, 329 (1995) (habeas the Petitioner claiming actual innocence must demonstrate that "it is more likely than not that no reasonable juror would have found the Petitioner him guilty beyond a reasonable doubt"); *Murray*, 477 U.S. at 496.  Accordingly, the Court finds and concludes that The Petitioner has procedurally defaulted claims four and five and does not reach the merits of those claims.

## B.  The Merits of the Petitioner's Claims

## 1.  Claim One

The Petitioner asserts in his first claim that he did not receive a fair trial because the evidence presented was insufficient to warrant a jury instruction on the theory of complicity.

A constitutional challenge to the sufficiency of the evidence is governed by *Jackson v. Virginia.*  As stated previously, evidence is sufficient to support a conviction as a matter of due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319 (emphasis in the original).  The Court looks at both direct and circumstantial evidence in determining the sufficiency of the evidence.  *See Lucero v. Kerby,* 133 F.3d 1299,

1312 (10th Cir. 1998).  The Court "may not weigh conflicting evidence nor consider the credibility of witnesses," but must "'accept the jury's resolution of the evidence as long as it is within the bounds of reason.'" *Messer v. Roberts*, 74 F.3d 1009, 1013 (10th Cir. 1996) (quoting *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993)).

Moreover, a general verdict of guilty satisfies due process as long as it is legally supportable on one of the submitted grounds, even though another basis for conviction lacked sufficient evidence.  *Griffin v. United States*, 502 U.S. 46, 56 (1991).  The Court in *Griffin* reasoned that jurors are presumed to follow the court's instructions and will not convict a defendant on a theory for which there is insufficient evidence when there exists an alternative ground for which the evidence is sufficient.  *Id.* at 59-60 (citation omitted); *see also U.S. v. Hanzlicek,* 187 F.3d 1228, 1236 (10th Cir. 1999) ("a district court does not commit reversible error where it submits a properly-defined, although factually unsupported, legal theory to the jury along with a properly supported basis of liability," citing *Griffin*).

The Colorado appellate court resolved the Petitioner's claim on direct appeal as follows:

Defendant first argues that the evidence is insufficient to support the jury's verdicts finding him guilty, under a theory of complicity, of attempted second degree murder and first degree assault.  We disagree.

A person commits the crime of murder in the second degree if he or she knowingly causes the death of a person.  Section 18-3-103, C.R.S., 2002.

A person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense.  A substantial step is any conduct, whether act, omission, or possession, which is strongly

> corroborative of the firmness of the actor's purpose to complete the commission of the offense.

Section 18-2-101(1), C.R.S. (2002).

> A person commits the crime of assault in the first degree if, with intent to cause serious bodily injury to another person, he or she causes serious bodily injury to any person by means of a deadly weapon. Section 18-3-202(1)(a), C.R.S. (2002).

The complicity statute, § 18-1-603, C.R.S. 2002, provides:

> A person is legally accountable as principal for the behavior of another constituting a criminal offense if, with the intent to promote or facilitate the commission of the offense, he or she aids, abets, advised, or encourages the other person in planning or committing the offense.

Complicity is not an offense, but a legal theory by which a defendant can be convicted. An instruction on complicity may be given when supported by evidence that two or more people jointly engaged in a crime. [citation omitted].

When assessing the sufficiency of the evidence in support of a finding of guilty, a reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of the accused's guilt beyond a reasonable doubt. In applying this standard, we must give the prosecution the benefit of every reasonable inference that might be fairly drawn from the evidence. [citation omitted].

Here, the trial evidence, when viewed according to the foregoing standards, establishes the following facts. A witness saw defendant and a companion harassing the victim by "pushing" and "patting him." The witness saw the victim grab his chest after defendant pushed the victim "real hard." As defendant walked toward the witness, the witness saw a knife in defendant's hand. Soon thereafter, the witness discovered that the victim had been stabbed in the chest.

This evidence was sufficient to establish defendant's guilt as a principal, and it appears most likely that this was the basis of the jury's verdicts. However, because the court also instructed the jury concerning complicity, we must also

determine whether the evidence is sufficient to support a finding that defendant was guilty as a complicitor. We conclude that it is.

If the jury was persuaded that defendant's companion stabbed the victim, then there was a sufficient evidentiary basis for the jury to conclude that defendant assisted and facilitated the stabbing by participating in a coordinated attack against the victim. Accordingly, we conclude the evidence supports the jury's verdicts finding defendant guilty of attempted second degree murder and first degree assault.

Answer Appendix E at 2-3.

Under *Griffin*, a petitioner's convictions are constitutional if the evidence was sufficient to establish his guilt either as a principal or a complicitor. The Court has carefully reviewed the transcripts of the Petitioner's trial and agrees with the state appellate court that the evidence supports the facts it described. Based on the evidence presented, a rational jury could conclude that the Petitioner committed the crimes charged as the principal, even if the evidence was insufficient to support a complicity instruction (an issue the Court need not decide). The Court therefore finds and concludes that the state appellate court's determination that the evidence was sufficient to support the jury's guilty verdicts under a theory of principal liability was not contrary to or an unreasonable application of *Griffin*. Accordingly, the Petitioner is not entitled to federal habeas relief on his first claim.

## 2. Claim Two

The Petitioner asserts in his second claim that the trial court precluded him from presenting a rebuttal witness to impeach a prosecution witness's prior inconsistent statement, in violation of his due process right to a fair trial.

In addressing the Petitioner's claim on direct appeal, the state appellate court described the relevant trial court proceedings as follows:

> [A] second witness testified that he encountered defendant shortly after the stabbing occurred. During cross-examination, defense counsel asked the witness whether he recalled telling a defense investigator that defendant had told him that his companion was the one who "did it." The prosecution objected to the question on the ground that it would elicit self-serving hearsay. The trial court overruled the objection and the witness testified that he did not recall making such a statement to the defense investigator.
>
> During the defense case, defendant sought to call his investigator to testify that the witness had told her that defendant had stated that it was his companion who "did it." The trial court sustained the prosecution's objection to the proposed testimony, explaining that it had erred in its earlier ruling allowing defendant to ask about his self-serving hearsay statement. The court further explained that this error would be exacerbated if the court were to allow defendant to impeach the witness's testimony with extrinsic evidence showing that he had in fact related the self-serving hearsay statement to the defense investigator.

Answer Appendix E at 3-4; *see also* State Court Record Vol. 10 at 377-78.

The state appellate court determined that the trial court was correct to conclude that the witness's testimony about defendant's statement was self-serving hearsay and should have been excluded. Answer Appendix E at 4. The appellate court then concluded that the Petitioner was not prejudiced unfairly by the trial court's subsequent ruling preventing him from impeaching the witness's claim that he did not remember telling the defense investigator of defendant's self-serving hearsay. *Id.* at 4-5. The appellate court reasoned:

> [W]e conclude that defendant was not prejudiced by the incompleteness of the trial court's remedy [in failing to strike the witness's response] because defendant presented similar evidence through the arresting officer, who testified that defendant had told him that his companion had committed the crime.

> Considering the totality of the circumstances surrounding the trial court's rulings, we conclude the court acted within its discretion [to correct a prior erroneous ruling]. And to the extent that defendant seeks to reframe his argument as a constitutional claim, we conclude that any error was harmless beyond a reasonable doubt . . . .

*Id.* at 5-6.

This Court does not review the correctness of a trial court's evidentiary rulings under state law. *Estelle*, 502 U.S. at 67. Where the state court applied the harmless-beyond-a-reasonable-doubt standard set forth in *Chapman*, 386 U.S. at 24, the federal habeas court "must decide whether the state court's finding of harmless error was contrary to or an unreasonable application of *Chapman*." *See Spears v. Mullin*, 343 F.3d 1215, 1232-33 n. 14 (10th Cir.2003).

The rebuttal evidence excluded by the trial court was cumulative of the arresting officer's testimony that when he arrested the Petitioner. The Petitioner stated "[i]t was my uncle." State Court Record Vol. 10 at 420. The Petitioner also testified in his own behalf that his uncle was the perpetrator. *Id.* at 384-85. Under the circumstances, there is no reasonable probability that the jury would have found the State's case less compelling if additional testimony on the same fact had been admitted as part of the defense case. The Court finds and concludes that the state appellate court's analysis of the Petitioner's claim was not contrary to, or an unreasonable application of, *Chapman*. Accordingly, the Petitioner is not entitled to habeas relief on his second claim.

**3. Claim Three**

The Petitioner alleges in his third claim that his sentence was enhanced in violation of *Apprendi* because the enhancing factors were not proven to the jury beyond a reasonable doubt. Petition at 6. Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In *Blakely v. Washington* 542 U.S. 296, 303-304 (2000), the Supreme Court clarified that the relevant "statutory maximum" is the maximum sentence a judge may impose based on the jury's guilty verdict, without any additional factual findings.

The state appellate court resolved the Petitioner's claim as follows:

Defendant argues that he was entitled to relief under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We disagree.

Defendant did not receive an aggravated range sentence. He was convicted of first degree assault under § 18-3-202(1)(a), C.R.S. 2006. This is a class three felony that is a per se crime of violence and an extraordinary risk crime. It therefore triggers a special penalty range of ten to thirty-two years under the combined operation of four related statutes:

First, § 18-1.3-401(1)(a)(V)(A), C.R.S. 2006, sets the presumptive range for class three felonies at four to twelve years.

Second, § 18-3-202(2)(c), C.R.S. 2006, provides that first degree assault is a per se crime of violence. *See Terry v. People*, 977 P.2d 145, 148 (Colo. 1999).

Third, § 18-1.3-401(10)(a), C.R.S. 2006, increases, to sixteen years, the maximum of the presumptive range for any class three felony that qualifies as an extraordinary risk crime. Defendant's offense qualifies as an extraordinary risk crime under § 18-1.3-401(10)(b)(XII), C.R.S. 2006, because it is a per se crime of violence that requires proof of serious bodily injury and the use of a deadly

weapon. See § 18-3-202(1)(a); *People v. Banks*, 9 P.3d 1125, 1131-32 & n. 10 (Colo. 2000).

Fourth, § 18-1.3-406(1)(a), C.R.S. 2006, provides: "Any person convicted of a crime of violence shall be sentenced . . . for a term of incarceration of at least the midpoint in, but not more than twice the maximum of, the presumptive range provided for such offense . . . as modified for an extraordinary risk crime . . . ."

Defendant's thirty-two-year sentence lies within the special penalty range defined by the legislature. It therefore does not violate the rules stated in *Apprendi* and *Blakely*. [citation omitted].
. . .

We therefore conclude that defendant's sentence did not violate *Apprendi* or *Blakely* and the trial court did not err in denying defendant's postconviction motion on that basis.

*Trujillo*, 169 P.3d at 237-38.

This Court is bound by the state appellate court's determination that the Petitioner's thirty-two year sentence is within the penalty range prescribed by the Colorado General Assembly for commission of first degree assault with a deadly weapon. *See Missouri v. Hunter*, 459 U.S. 359, 366, 368 (1983) ("We are bound to accept the [State] court's construction of that State's statutes.")). The Petitioner was convicted of first degree assault based on the jury's findings, upon proof beyond a reasonable doubt, that the Petitioner "[w]ith intent to cause serious bodily injury to [the victim]," did "cause[ ] serious bodily injury to [the victim] means of a deadly weapon." C.R.S. § 18-3-202(1)(a) (2006). The elements of the crime for which the Petitioner was tried define the Petitioner's conviction as both a per se crime of violence and an extraordinary risk crime under the Colorado sentencing statutes. Moreover, contrary to the Petitioner's assertions in his Traverse, the prosecution is not required to plead and prove a

separate crime of violence when the charged offense is a per se crime of violence. *See People v. Banks*, 9 P.3d 1125, 1130 (Colo. 2000). The Court finds and concludes that the state appellate court's determination that *Apprendi* and *Blakely* were not implicated by the Petitioner's thirty-two year prison sentence was not contrary to or an unreasonable application of those decisions. The Petitioner's sentence was within the maximum authorized by Colorado statutes for his offense based solely on the facts presented at trial that established his guilt. The Petitioner is not entitled to federal habeas relief on his third claim.

**4. Claim Six**

For his sixth and final claim, the Petitioner asserts that his court-appointed appellate counsel was constitutionally ineffective in failing to raise the following arguments on appeal: (a) the trial court's admission of evidence concerning the out-of-court show-up identification violated due process; (b) the Petitioner was denied a fair trial because the jury saw him in restraints; and, (c) the trial court's refusal to instruct the jury on the Petitioner's theory of the case violated due process.

The Court applies the *Strickland v. Washington*, 466 U.S. 668 (1984) standard in analyzing the Petitioner's claim that his appellate counsel provided constitutionally inadequate assistance. *See Knowles v. Mirzayance,* ___ U.S. ___, 129 S. Ct. 1411, 1419 (2009) ("[T]his Court has repeatedly applied [the *Strickland* ] standard to evaluate ineffective-assistance-of-counsel claims where there is no other Supreme Court precedent directly on point."). To prevail on his claim, the Petitioner must show that: (1) counsel's legal representation fell below an

objective standard of reasonableness; and (2) the Petitioner was prejudiced as a result. *Strickland*, 466 U.S. at 687-88.

When the basis for an ineffective assistance claim is appellate counsel's failure to raise an issue, the Supreme Court has recognized that "appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Malicoat v. Mullin*, 426 F.3d 1241, 1249 (10th Cir. 2005) (quoting *Smith v. Robbins*, 528 U.S. 259, 288 (2000) (citation omitted)). "Indeed, the winnowing out of weaker arguments so that counsel may focus the court's attention on those more likely to prevail 'is the hallmark of effective advocacy.'" *Malicoat* 426 F.3d at 1249 (quoting *Tapia v. Tansy*, 926 F.2d 1554, 1564 (10th Cir.1991)). The Court considers the merits of the omitted issue to determine whether counsel's representation was deficient. *Cargle v. Mullin,* 317 F.3d 1196, 1202 (10th Cir. 2003). If the omitted issue is without merit, the failure to raise it is not deficient performance. *Id.* A petitioner is entitled to federal habeas relief only if he establishes a reasonable probability of a favorable result had counsel raised the omitted issue. *Malicoat*, 426 F.3d at 1249.

The state appellate court applied the *Strickland* standard in analyzing the Petitioner's claim in the state post conviction proceeding. *Trujillo*, 169 P.3d at 238-39. The Court examines each of the Petitioner's contentions below under the deferential AEDPA standard of review.

### a. Trial court's admission of unconstitutional show-up identification

The Petitioner first claims that appellate counsel was ineffective in failing to challenge the trial court's admission of evidence concerning the female witness's show-up identification of

the Petitioner as a violation of his due process rights. The witness identified the Petitioner as the person who stabbed the victim when an escorting police officer drove her from the crime scene to the location where the Petitioner was detained in handcuffs, in the presence of police officers. State Court Record Vol. 3 at 17-18, 63, 81-85.

The Petitioner filed a motion to suppress the out-of-court identification before trial. The trial court denied the motion after an evidentiary hearing, finding that there was no "substantial likelihood of irreparable misidentification" based on the following: (1) the witness had substantial time to view the individual who stabbed the victim; (2) the witness was paying close attention to the altercation between the two Hispanic males and the victim; (3) the witness was accurate in her description of the assailant: (4) both the officer and the witness testified that the witness was certain of her identification of the Petitioner; and, (5) the witness made the identification within several minutes after the stabbing occurred. State Court Record Vol. 4 at 11-12.

An out-of-court identification comports with due process if it is reliable. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (concluding that "reliability is the linchpin in determining the admissibility of identification testimony"). Reliability is assessed based on consideration of five factors, which must be weighed against the suggestiveness of the identification method: (1) the prior opportunity of a witness to observe the defendant during the alleged criminal act; (2) the degree of attention of the witness; (3) the accuracy of the witness' prior description; (4) the witness' level of certainty; and (5) the time between the crime and the confrontation. *Id.*

The state appellate court concluded that the Petitioner's appellate counsel was not ineffective in failing to challenge the trial court's admission of the show-up identification because the claim lacked merit, and, therefore, the Petitioner did not suffer any prejudice from the omitted issue. The appellate court reasoned:

> The trial court correctly ruled that, based upon the totality of the circumstances, and under the factors set forth in *People v. Williams*, 183 Colo. 241, 516 P.2d 114 (1973), the one-on-one showup was not unlawful. Where the identifying witness observed the assault, observed defendant, spoke with defendant, and positively identified him within minutes of the assault, there was no reasonable likelihood that the identification was tainted by the showup procedure or that the identification was somehow unreliable. *See People v. Young*, 923 P.2d 145, 151 (Colo. App. 1995).

*Trujillo*, 169 P.3d at 239.

The trial court's factual findings regarding the reliability of the identification are presumed correct and the Petitioner has not rebutted those findings with any clear and convincing evidence. The Court finds that the appellate court's rejection of the Petitioner's ineffective assistance of appellate counsel claim, based on the trial court's application of the *Manson* reliability factors, was not contrary to, or an unreasonable application, of *Strickland*, nor did the state courts unreasonably determine the facts in light of the evidence presented. *See Young v. Sirmons*, 486 F.3d 655, 664-66 (10th Cir. 2007) (concluding that state appellate court's resolution of one-person show up claim was not contrary to, or an unreasonable application of, *Manson*, where court applied factors and determined that identifications were reliable). The Petitioner is therefore not entitled to federal habeas relief on his claim that appellate counsel was constitutionally ineffective in failing to challenge the legality of the show-up identification.

### b. The Petitioner's appearance at trial in restraints

The Petitioner next asserts that appellate counsel should have challenged the Petitioner's appearance before the jury in restraints as a violation of his due process right to a fair trial by an impartial jury. Although the Petitioner does not flesh out this claim in his Petition, he alleged in the state post conviction proceeding that jury members were present when he was escorted by sheriff's deputies through a court hallway. The Petitioner further asserted that the restraints may have led the jury to believe that he was a dangerous person.

During the voir dire process, defense counsel moved for a mistrial because some of the prospective jurors may have seen the Petitioner in shackles during a court recess. The following colloquy occurred between defense counsel and the Court:

> DEFENSE COUNSEL: Additionally, Judge, the Court indicated earlier on, because we had indicated what our pleasure was in terms of not allowing the jury to know to the extent possible that our client was in custody, the last time we were up here at the bench when the jury had been excused, they were out mingling in the hall. When we finished talking here, I went out the door to try and come around the side door to pick up my client and walk down the hall with him. He was already walking down the hall with the sheriff. So, that is gone as the result of that, and for the reasons that we were trying to hide that from the jury, essentially I would be moving for a mistrial and ask that we get a new panel.
>
> THE COURT: Did that occur before we just reconvened?
>
> DEFENSE COUNSEL: It occurred while we were standing here at the bench making the record on the juror who was just excused. And when I left here, I walked over, out the door so he could go around to the side door to catch him so that I could walk down the hall with him, but he was already almost to the holding cell.
>
> THE COURT: The Court will deny that motion.

State Court Record Vol. 8 at 74-75.

The state appellate court affirmed the trial court's ruling based on the following reasoning:

> Defendant's request for a mistrial should not have been granted because the record does not show that defendant appeared in court in restraints. Instead, the record indicates that when defendant left the courtroom through the side door at a recess, he was escorted back to his holding cell in restraints. Although some of the jurors may have been milling around in the hallway, it is not certain that they saw defendant or, if so, they saw his restraints. In any event, there is no suggestion that the restraints were unnecessary where defendant was being escorted in a public hallway. [citations omitted].

*Trujillo*, 169 P.3d at 239.

On federal habeas review, this Court must determine whether the state appellate court's determination of the Petitioner's claim was contrary to, or an unreasonable application of, clearly established federal law as determined by the United States Supreme Court at the time the Petitioner's conviction was final. 28 U.S.C. § 2254(d)(1); *Williams*, 529 U.S. at 390.

The Supreme Court recognized in *Illinois v. Allen*, 397 U.S. 337, 344 (1970), that a criminal defendant may be prejudiced if he appears before the jury bound and gagged. The Court observed, however, that in certain extreme situations, "binding and gagging might possibly be the fairest and most reasonable way to handle" a particularly obstreperous and disruptive defendant. *Id.* In *Estelle v. Williams*, 425 U.S. 501 (1976), the Court addressed the constitutionality of forcing a criminal defendant to wear prison clothes when appearing before the jury. The Court deemed the practice unconstitutional because "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment," *id.* at 504-505, and no "essential state policy" is served by compelling a defendant to dress in prison attire. *Id.* at 505. The Court in *Estelle* expressly distinguished the use of physical

restraints on a defendant, which may further an essential state policy. *Id.* In *Holbrook v. Flynn*, 475 U.S. 560, 571-72 (1986), the Court held that the presence of four uniformed police officers in the courtroom during a criminal trial was not inherently prejudicial and that any "slight degree of prejudice attributable to the troopers' presence" was outweighed by the State's legitimate need to maintain custody over the defendants who had been denied bail.

The Supreme Court's decisions in *Allen*, *Estelle*, and *Holbrook* address potentially prejudicial practices *in the courtroom* which may undermine the constitutional presumption of innocence to which a criminal defendant is entitled. Here, there is no evidence that the Petitioner was shackled during courtroom proceedings. The state appellate court's factual finding that the Petitioner was not shackled during the trial, but was removed from the courtroom in shackles during a court recess, is entitled to a presumption of correctness under 28 U.S.C. § 2254(d), which the Petitioner has failed to rebut with clear and convincing evidence. The appellate court's finding that the jurors may or may not have seen the Petitioner in the hallway in restraints is likewise not refuted by the trial record, *see id.*, despite the Petitioner's allegation to the contrary. *See* Traverse at 13. At the time the Petitioner's conviction was final, no Supreme Court decision held that it is inherently prejudicial, and a violation of due process, for jurors to observe a criminal defendant being transported in shackles through a court hallway by law enforcement authorities during a court recess.

The Tenth Circuit has recognized that a juror's brief view of the defendant in shackles outside the courtroom does not justify a new trial absent a showing of actual prejudice. *See U.S. v. Simpson,* 950 F.2d 1519, 1522 (10th Cir. 1991) ("an isolated view by jurors of a defendant in

29

handcuffs does not justify a new trial in the absence of a showing of actual prejudice")
(collecting cases); *see also Ghent v. Woodford*, 279 F.3d 1121, 1133 (9th Cir. 2002) (jury's
"brief or inadvertent glimpse" of a shackled defendant in the hallway is not presumptively
prejudicial); *see U.S. v. Traeger,* 289 F.3d 461, 473 (7th Cir. 2002) (juror's brief view of the
defendant in custody outside the courtroom is not sufficient to establish prejudice warranting a
new trial).  The Petitioner has not made any showing that he was actually prejudiced as a result
of his presence in the hallway in restraints where some potential jurors may or may not have
seen him.

Moreover, the decisions of *Allen*, *Estelle* and *Holbrook* teach that a State's legitimate
interest in maintaining order and security may outweigh any prejudice to the defendant resulting
from his appearance before the jury in restraints.[7]  The state appellate court's implicit
determination that the State had a legitimate security interest in shackling the Petitioner, who
was on trial for a violent crime, while he was walking down a public corridor is consistent with
Supreme Court precedent.

The Court finds and concludes that the state appellate court's rejection of the Petitioner's
claim on the grounds that the issue lacked legal merit and the Petitioner was not prejudiced as a
result of appellate counsel's failure to raise the issue, was not contrary to, or an unreasonable

---

[7]After the Petitioner's conviction was final, the Supreme Court held in *Deck v. Missouri*,
544 U.S. 622, 629 (2005), that the Fifth and Fourteenth Amendments prohibit the use of physical
restraints visible to the jury during a criminal trial "absent a trial court determination, in the
exercise of its discretion, that they are justified by a state interest specific to a particular trial." In
*Deck*, the defendant was shackled with leg irons, handcuffs and a belly chain throughout the trial
and penalty phase.  *Id.* at 625.

application of *Strickland*, based on the holdings of *Allen, Estelle* and *Holbrook*. The Petitioner is therefore not entitled to federal habeas relief on his claim that appellate counsel was constitutionally ineffective in failing to argue that the Petitioner was deprived of a fair trial because he appeared in shackles in a court hallway where some prospective jurors were present.

### c. Failure to instruct on theory of defense

Finally, the Petitioner makes a conclusory assertion that his appellate counsel was ineffective in failing to challenge the trial court's refusal to instruct the jury on the Petitioner's theory of defense as a violation of due process. The Petitioner did not further elaborate on the basis for this claim in his state post conviction proceeding.

The state court record reflects that the trial court rejected the defense's tendered theory of defense instruction because "it had a lot of facts that were never brought before the jury, and the Court modified that instruction as it is required to do to develop an appropriate theory of the case instruction." State Court Record Vol. 10 at 430.

The trial court gave the following theory of defense instruction:

> Mr. Trujillo contends that he did not stab Mr. Rodriguez. He contends that he had been with his uncle . . . for most of the day drinking and riding on the bus and they got off the bus on Colfax. He contends that [his uncle] stabbed Mr. Rodriguez and then handed the knife to him. Mr. Trujillo contends that he ran from the scene and threw the knife. Mr. Trujillo contends that when the police arrested him, he told them that his uncle did it.
>
> Mr. Trujillo contends that he did not stab or harm Mr. Rodriguez in any way.

State Court Record Vol. 1 at 130.

The theory of defense instruction tendered by the Petitioner and rejected by the trial court included the additional facts. Before the stabbing, the Petitioner's uncle began to argue with the

victim. The Petitioner attempted to calm his uncle down and restrain him, but despite the Petitioner's efforts, the uncle stabbed the victim in the chest. *Id.* at 124.

The state appellate court determined that the Petitioner's claim was without merit because "[c]ontrary to defendant's assertion, his tendered instruction on a theory of defense was in fact given." *Rodriguez*, 169 P.3d at 239. The appellate court thus found that the Petitioner did not suffer any prejudice as a result of appellate counsel's omission of the issue on direct appeal. *Id.* at 239.

Under Colorado law, a theory of defense instruction must be supported by the evidence at trial. *See People v. Saavedra-Rodriguez,* 971 P.2d 223, 228 (Colo. 1998) (a defendant is entitled to an instruction on a theory of defense if it supported by "a scintilla of evidence"); *People v. Nunez*, 841 P.2d 261, 264 (Colo.1992). The trial court's determination that the instruction tendered by the defense included facts that were not supported by the evidence at trial is entitled to a presumption of correctness that the Petitioner has failed to rebut with clear and convincing evidence. The Petitioner's challenge to the trial court's modification of the theory of defense instruction therefore lacks legal merit. Further, the Petitioner has not shown that he was prejudiced as a result of appellate counsel's failure to raise the issue. The Court finds and concludes that the state appellate court's rejection of the Petitioner's claim was not contrary to, or an unreasonable application of, *Strickland*. The Petitioner is not entitled to federal habeas relief on his claim.

To the extent that the Petitioner challenges counsel's omission of any other issues on direct appeal, his failure to articulate the basis of his claim precludes federal habeas relief. *See Cummings v. Sirmons*, 506 F.3d 1211, 1233-34 (10th Cir. 2007).

For the reasons discussed above, it is ORDERED that the Petitioner Vincent Trujillo's Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (# 2) is **DENIED**. It is FURTHER ORDERED that no certificate of appealability will issue because the Petitioner has not made a substantial showing of the denial of a constitutional right. The Clerk of the Court shall close this case.

Dated this 6th day of July, 2010

BY THE COURT:

Marcia S. Krieger
United States District Judge